ALBERT TURNER, Respondent, *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant.

Contract — master and servant — agreement delivered subject to approval, becomes effective when approved according to its terms — when agreement was that insurance company would pay agent for renewals up to certain date agent cannot recover for renewals after said date but before date of approval — evidence — when letters of general agent protesting against dismissal of subagent improperly received in action by subagent to recover on his contract.

1. A contract entered into between the general agent and a subagent of an insurance company delivered subject to the condition that it should not take effect until approved by the company, when so approved becomes effective according to its terms, and where one of its terms was that the company would assume an obligation in respect of policies written before a certain date the subagent cannot recover thereon for policies written after the date mentioned but before the date of approval.

2. Where by its terms the agreement was to continue " so long as the said agent shall continue to work satisfactorily and exclusively for the company," and thereafter the company notified the subagent that his services were not satisfactory and that the arrangement under the contract would be discontinued and in an action to recover on said contract the issue was whether the company's dissatisfaction was genuine or feigned, letters written by the general agent, who was charged with no duty in the premises, protesting against the cancellation of the subagent's contract were improperly received in evidence.

*Turner* v. *Northwestern Mut. Life Ins. Co.*, 190 App. Div. 913, reversed.

(Argued October 13, 1921; decided November 22, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 10, 1919, unanimously affirming a judgment in favor of plaintiff, entered upon a verdict.

*Edwin F. Valentine* for appellant. The trial court committed error in submitting to the jury as a question of fact the issue as to when the contract took effect,

whether as of March 10, 1902, or December 20, 1904, and the court should have held as matter of law that plaintiff was not entitled to recover for commissions during the period between March 10, 1902, and December 20, 1904. (*Hamlin* v. *Hamlin,* 192 N. Y. 164; *Cocks* v. *Barker,* 49 N. Y. 107; *Braman* v. *Bingham,* 26 N. Y. 483; *Yutte* v. *Yutte,* 39 Misc. Rep. 272; *Rankin* v. *Donovan,* 46 App. Div. 225; 166 N. Y. 626; *Town of Cherry Creek* v. *Beeker,* 123 N. Y. 161; *Blewitt* v. *Boorum,* 142 N. Y. 357; *Reynolds* v. *Robinson,* 110 N. Y. 654; *Stiebel* v. *Grosberg,* 202 N. Y. 266; *Engelhorn* v. *Retlinger,* 122 N. Y. 83; *Piretti* v. *Firestone Tire Co.,* 120 N. Y. Supp. 782.) The trial court committed error in the reception of certain letters and other writings as evidence. (*First Nat. Bank* v. *Ocean Nat. Bank,* 60 N. Y. 278; *Goetz* v. *Met. St. Ry. Co.,* 54 App. Div. 365; *Resech* v. *Columbia M. W. & M. I. Co.,* 176 App. Div. 783; *Corn* v. *Bergmann,* 145 App. Div. 218.)

*William L. Rumsey* for respondent. No error was committed by the trial court in submitting to the jury, as a question of fact, the issue as to when the contract took effect. (*Darling* v. *Klock,* 33 App. Div. 270; *People ex rel. Toms* v. *Bd. Suprs.,* 199 N. Y. 153; *Flora* v. *Carbeau,* 38 N. Y. 111; *Crane* v. *Powell,* 139 N. Y. 379; *Benton* v. *Martin,* 52 N. Y. 570; *Higgins* v. *Ridgway,* 153 N. Y. 130; *Niblock* v. *Sprague,* 200 N. Y. 390; *Smith* v. *Dotterweich,* 200 N. Y. 299; *Burke* v. *Dulaney,* 153 U. S. 237; *Pym* v. *Campbell,* 6 El. & Bl. 370.) No errors were committed in the admission of evidence. (*Goetz* v. *M. S. R. R. Co.,* 54 App. Div. 365; *Resech* v. *Columbia M. W. & M. I. Co.,* 176 App. Div. 783; *Delano* v. *Col. Metal Works,* 179 App. Div. 153; *Studner* v. *H. & N. Co.,* 185 App. Div. 133; *Beck* v. *Only Skirt Co.,* 176 App. Div. 867; *Zahler* v. *Mann,* 97 Misc. Rep. 19.)

CARDOZO, J. On January 6, 1897, plaintiff became the subagent of one Bristol, who was the defendant's

general agent for soliciting life insurance in the city of
New York. He was to have commissions during the
continuance of his agency on all renewal policies written
through his procurement. His employer was not the
company, but Bristol; and Bristol, and not the company,
incurred the obligation to pay. In March, 1902, there
was a new arrangement. The plaintiff changed his con-
tract with Bristol in respect of policies to be written in
the future, but exacted the obligation of the company
in respect of policies written in the past. The new
arrangement is embodied in two instruments signed by
the plaintiff and Bristol, both dated March 10, 1902.
One, relating to future business, need not detain us,
for it does not bind the company. The other, affecting
past business, is the basis of this action. It cancels
and declares of no effect the contract of January 6, 1897,
in so far as that contract relates to policies written on
and after March 10, 1902. It provides that the renewal
commission on all "policies dated prior to March 10,
1902," shall be paid by the company "so long as the
said agent shall continue to work satisfactorily and
exclusively for the company," and no longer. It provides
also that the continuation of renewal commissions shall
be "subject to the approval of this agreement by the
said company." That approval is evidenced by a note
at the foot of the agreement, signed by the defendant
through its superintendent of agencies, and dated Decem-
ber 20, 1904. The plaintiff testifies to an oral agreement
between Bristol and himself that the contract of can-
cellation should not take effect until approval was
obtained, and that delivery of the writing should be
subject to that condition. Controversy did not arise
till 1914. On January 7 of that year, the defendant
by its superintendent of agencies gave notice to the
plaintiff that his services were not reasonably satis-
factory, and that payment of renewals on policies ante-
dating March 10, 1902 (the notice said erroneously

January 1, 1902), would, therefore, be discontinued. In respect of business not covered by the defendant's covenant of assumption, the obligation, if any, was that of Bristol personally. The plaintiff waited some four years, and then, asserting that the company's dissatisfaction was fraudulent and feigned, brought suit for his damages. His contract with Bristol would have expired by its terms at the end of 1916. Whenever policies were written before December 20, 1904, the company has has been held liable, up to the natural expiration of the contract, for commissions on renewals.

(1) The first question is whether the defendant is under any obligation in respect of policies written between March 10, 1902, and December 20, 1904. The plaintiff argues that the contract of March 10, 1902, was delivered subject to the condition that it should not take effect until approved by the defendant. Even so, when approved, it became effective according to its terms. One of its terms was that the defendant would assume an obligation in respect of policies written before March 10, 1902. The plaintiff would have us modify this promise by substituting an assumption of obligation in respect of all policies written before December 20, 1904. This is to change the promise in one of its express restrictions (*Thomas* v. *Scutt,* 127 N. Y. 133). The plaintiff under his earlier contract had the personal obligation of Bristol and nothing more. He reinforced that obligation in respect of a restricted class of business by the obligation of the company. If he cannot bring the obligation within the terms of the assumption, he does not get it at all.

We conclude that commissions on renewals between March 10, 1902, and December 20, 1904, were improperly included.

(2) The next question is whether the verdict in respect of business prior to March 10, 1902, is vitiated by error in rulings upon evidence.

The issue was whether the defendant's dissatisfaction with the plaintiff's services was genuine or feigned. In support of plaintiff's contention that dissatisfaction was feigned, the court received the letters of Bristol to the defendant protesting against the cancellation and urging revocation. There was no denial that the business written by the plaintiff had fallen off during the two years preceding the announcement of the company's election. Only $89,500 of insurance was written in 1912, and only $26,000 in 1913, as against hundreds of thousands of dollars of insurance in every preceding year. The argument was advanced in Bristol's letters that in spite of the falling off of business, the cancellation of the contract would have a bad effect on the other members of the force of agents. The plaintiff, it was said, had been ill; he had done well in earlier years; and the company should be generous. We think these declarations were incompetent. Mr. Bristol was an agent to solicit insurance, and nothing more. He was not charged with any duty in respect of the cancellation of this contract. His argument with his superiors that they were acting harshly or unwisely was not a declaration in the business of his agency (*Stecher Lithographing Co.* v. *Inman,* 175 N. Y. 124). The fact of illness might, of course, be proved. So might the fact of success in earlier years. What the court admitted was Bristol's written estimate of the wisdom and justice of the conduct of his principal.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., POUND, McLAUGHLIN and CRANE, JJ., concur; HOGAN, J., concurs on second ground stated in opinion; ANDREWS, J., absent.

Judgments reversed, etc.