(77 App. Div. 6.)

### LEARY et al. v. ALBANY BREWING CO.

(Supreme Court, Appellate Division, Fourth Department. November 25, 1902.)

1. PRINCIPAL AND AGENT—EVIDENCE OF AGENCY—REPRESENTATIONS OF AGENT.
    Where S. had never been defendant's agent, and defendant had never held him out as possessing any authority to act for it, the fact that S. went with M., to whom defendant had advanced money with which to pay a liquor license, to plaintiffs' place of business, to contract for plumbing, where S. directed plaintiffs to do the work and charge the same to defendant, and a bill for the work having been sent to S. he approved it and forwarded it to defendant, which denied all liability thereon, was insufficient to establish the authority of S. to bind defendant.

2. SAME—DECLARATIONS OF AGENT.
    Where declarations of an agent were not made in connection with any act done in the performance of his duties as an agent, they are inadmissible as against the principal.

¶ 2. See Evidence, vol. 20, Cent. Dig. § 887.

**3. CORPORATIONS—POWERS—NOTICE—ACTS OF AGENT.**
Since persons dealing with a brewing company are chargeable with notice that it is no part of the company's legitimate business to set up a saloon for one of its customers, it could not be presumed that an agent of such corporation possessed any authority to employ plaintiff, a plumber, to construct the plumbing in a saloon of one of such customers.

Appeal from special term, Herkimer county.

Action by John F. Leary and another (composing the firm of Leary & Malone) against the Albany Brewing Company. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

For former opinion, see 72 N. Y. Supp. 657.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Florence J. Sullivan, for appellant.
Raymond D. Fuller, for respondents.

DAVY, J. The plaintiffs recovered a judgment against the defendant for $291.42 at the Herkimer county trial term. From that judgment and the order denying a motion for a new trial this appeal is taken. The principal question in this case is whether the defendant ratified the contract of one John Sheridan, who was an assumed agent. In November, 1900, William Moore, of Little Falls, with Walter Sheridan and John Sheridan, went to the office of the defendant in the city of Albany to make arrangements with the defendant to sell its beer. Moore was introduced to the assistant superintendent, Mr. Grey, by Walter Sheridan, who was the defendant's agent for the sale of beer in the counties of Montgomery and Herkimer. Moore informed Grey that he was making arrangements to open a saloon in the city of Little Falls, and that he wanted to borrow some money to pay for a license. Grey then asked Walter Sheridan how Moore stood generally in the community. Walter in reply said he was all right, that he was joint heir to some property in Amsterdam, and when that was paid, which would be within a month or two, he would pay it back. Grey advanced the money by giving him a check for $144. Moore and the two Sheridans then went from the office of the defendant to the store of one George Spalt, in Albany, and ordered an ice box, which was shipped to Moore at Little Falls. Shortly thereafter John Sheridan and Moore called on the plaintiffs and made arrangements with them to do the plumbing to be done in putting in the ice box. It is claimed by the plaintiffs that John Sheridan directed them to go and do the work and charge it to the defendant. It appears that after the work was completed the plaintiffs sent the bill to John Sheridan, who approved it, and forwarded it to the defendant. The bill was returned to the plaintiffs with a letter from Grey, stating, in substance, that they had given no instructions to have the work done and would not pay the bill.

The plaintiffs contend that the contract made by John Sheridan was subsequently ratified by the assistant superintendent of the defendant, in an interview with one of the plaintiffs, John F. Leary, which occurred at the defendant's office in the city of Albany some four

months after the date when the plaintiffs had the alleged conversation with John Sheridan, and about two months after the saloon in which the work was done was destroyed by fire. Leary testified that he asked Grey to pay the bill, and his reply was that he wanted to wait and get security from Moore. Plaintiff then said to him that he had waited long enough, that the bill ought to be settled, and that he did not get any satisfaction from either the agent or him. Grey said that they had advanced all the money to Moore that they intended to until they got some security. Plaintiff asked him if Sheridan was the agent of the Albany Brewing Company, and he said he was for Montgomery and Herkimer counties. Plaintiff said he understood from what Grey had said that the defendant would not advance any more money until he got security, and that there was no direct promise by Grey to pay the bill. Grey denies that he ever stated to the plaintiff that John Sheridan was their agent in Montgomery and Herkimer counties, but he did say that Walter Sheridan was their agent for three counties, and that he never agreed, directly or indirectly, to pay plaintiff's bill; that John Sheridan never was the agent of the defendant either for the sale of beer or for making contracts of any kind. John Sheridan testified that he never acted as agent for the company, and that he had no authority from the defendant to make the contract in question. There is no evidence in the case that he was ever the agent of the company, except his own alleged declaration at the time the contract was made with the plaintiffs. There is no evidence that the defendant ever held him out to the world as possessing any authority to transact any kind of business for the company.

It is a well-settled rule of law that a principal is bound only by the authorized acts of his agent. The authority to act may be proved by an instrument in writing creating the agency, or by verbal statements of the principal it may be shown that the principal has held the agent out to the world in other instances as having authority which will embrace the particular act in question. But it cannot be created by the unauthorized representations of the agent. The declarations of an agent, in order to be competent evidence against the principal, must be made in connection with some act done in performance of his duties as agent; or, in other words, the representations of the agent, when not expressly authorized by the principal, must, in order to bind him, be within the scope of his agency. Manhattan Life Ins. Co. v. Forty-Second St. & G. St. Ferry R. Co., 139 N. Y. 151, 34 N. E. 776; Anderson v. Railroad Co., 54 N. Y. 334.

Applying the principles which have just been stated to the case at bar, they are decisive against the plaintiffs. John Sheridan had no power to make any contract with the plaintiffs in reference to doing the work for Moore. The authority which he assumed had never had any existence. All that can be said in behalf of the plaintiffs on this point is that John Sheridan told the plaintiffs that he was the agent of the defendant, and to send this bill to him, and he would O. K. it, and send it to the defendant. It appears that Sheridan was an entire stranger to the plaintiffs. They never knew him before this occasion, and they never made any inquiry of the

defendant or any other person as to his right to make such a con-
tract. They relied wholly on his representations as to his authority
to make the contract. These representations, which were the un-
authorized declarations of an assumed agent, were not binding upon
the defendant. No representations are sufficient to create an agen-
cy. Any person may bind himself as he pleases, but, to be bound
by the act of another, that other must have authority to do the act.
Marvin v. Wilber, 52 N. Y. 273. An agent cannot bind a party for
whom he is not an agent, no matter how much he assumes. He
cannot create an agency by representations. Marvin v. Wilber,
supra; People's Bank of City of New York v. St. Anthony's Roman
Catholic Church, 109 N. Y. 523, 17 N. E. 408.

Even the assistant manager of the corporation could have no pow-
er to make such a contract unless authorized by the board of direct-
ors. He would not have the power to bind the defendant in making
contracts outside of the legitimate business which the corporation
was authorized to transact under its charter. A corporation like
the defendant is created and exists by virtue of the statute laws
of the state, and organized for purposes defined in its charter, and
he who deals with such a corporation is chargeable with notice of
the purposes for which it was organized, and when he deals with an
agent who is an entire stranger to him he is bound to know the
agent's power and the extent of his authority to act in the matter.

In this case the plaintiffs were chargeable with knowledge that
this corporation was organized for the purpose of manufacturing
ale and beer. They were chargeable with notice that it was no part
of the legitimate business of the corporation to go into the plumbing
business, or erecting, building, or fitting up saloons for their custom-
ers. It can never be presumed that the agent of such a corporation
has authority to transact business which the corporation itself is not
by its charter authorized to transact. It was stated by Judge Earl
in Alexander v. Cauldwell, 83 N. Y. 485, that:

"Every one knows that corporations are artificial creations existing by
virtue of law, and organized for purposes defined in their charters, and he
who deals with one of them is chargeable with notice of the purpose for
which it is formed, and when he deals with agents or officers of one of them
he is bound to know their powers and the extent of their authority."

In Filon v. Miller Brewing Co. (Sup.) 15 N. Y. Supp. 57, a case
somewhat similar to the one at bar, the action was on a lease alleged
to have been executed by the defendant corporation as lessee. The
plaintiffs were owners of property which was used as a restaurant
and summer hotel at Irondequoit Bay. The defendant, the Miller
Brewing Company, was a corporation organized under the general
manufacturing companies act, for the purpose of the manufacture
and sale of beer and malt. Harris, who purchased and sold the de-
fendant's beer, applied to the plaintiffs to rent the premises, and they
refused to lease to him without security. The secretary of the Miller
Brewing Company executed the lease in the name of the corporation
after obtaining the individual consent of a majority of the trustees.
The action was brought against the brewing company to recover
the amount due upon the lease. The court held that the action could

not be maintained against the corporation; that the individual con-sent of a majority of the trustees that the secretary might execute the lease for the corporation conferred no authority on him to sign the lease; and that neither the individual members of the board nor the board of trustees itself could confer such authority, as the cor-poration had no such authority under its charter, and therefore the contract was ultra vires.

In People's Bank of City of New York v. St. Anthony's Roman Catholic Church, supra, Judge Andrews says:

"The trustees of a corporation have no separate or individual authority to bind the corporation, and this although the majority or the whole number, acting singly and not collectively as a board, should assent to the particular transaction."

There is no evidence in this case that the board of directors ever authorized its assistant manager to make any contracts outside of its legitimate business.

We think that the verdict is contrary to the evidence, and a new trial should be granted, with costs to the appellant to abide the event. All concur.