McCORRY et al. v. JOHN C. WIARDA & CO.

(Supreme Court, Appellate Division, Second Department.   March 29, 1912.)

1. CORPORATIONS (§ 518*)—EMPLOYMENT OF BROKER—COMMISSIONS—ISSUES
    AND PROOF.
        Plaintiff, alleging that defendant corporation, which was organized
    for manufacturing chemicals, etc., agreed to pay him a commission for pro-
    curing a buyer for a certain property occupied by it as a plant, could
    not recover on evidence that the property was owned by the chief ex-
    ecutive officer of the corporation, with no evidence that he authorized
    the corporation to make the contract.
        [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2028;  Dec.
    Dig. § 518.*]

2. BROKERS (§ 84*)—COMMISSIONS—BURDEN OF PROOF.
        In a suit by a broker for commissions and general denial by defendant,
    he has the burden of proving the contract alleged.
        [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105;  Dec.
    Dig. § 84.*]

3. CORPORATIONS (§ 432*)—AUTHORITY OF OFFICER—SALE OF PROPERTY.
        The executive officer of a corporation, organized for manufacturing
    purposes, could not be presumed to have authority to contract with a
    broker for commissions for sale of the property occupied by it as a plant.
        [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718,
    1724, 1726–1737, 1743, 1762;  Dec. Dig. § 432.*

4. CORPORATIONS (§ 407*)—OFFICERS—AUTHORITY.
        The executive officer of a corporation could not make a contract in
    its behalf to hire brokers to sell his individual property.
        [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1615–1619;
    Dec. Dig. § 407.*]

Appeal from Trial Term, Queens County.

Action by Alfred E. F. McCorry and another against John C. Wi-
arda & Co.   From a judgment for plaintiff and from an order deny-
ing a new trial, defendants appeal.   Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and
WOODWARD, JJ.

Frederick N. Van Zandt (Joseph A. Burdeau, on the brief), for
appellant.

George A. Gregg, for respondents.

WOODWARD, J.   The complaint in this action alleges:  That the
defendant is a corporation organized and doing business under the
laws of the state of New York;  that the plaintiffs are copartners;
that "on or about the 13th day of August, 1908, these plaintiffs and
the defendant entered into an agreement whereby the defendant
agreed to pay a commission of 10 per cent. to these plaintiffs, on
the gross sum of the transaction, provided these plaintiffs produced a
purchaser for the mill and quarry at South Glastonburg, Conn., con-
sisting of two pieces of real estate known as the Glastonburg Feld-
Spar Mills, and the personal property connected with said business";
that the said commission of 10 per cent. was to be paid as a brok-
erage;  that "in accordance with said agreement plaintiffs produced

a purchaser, ready, willing, and able to purchase said property at the sum of $12,000, which the defendant herein duly accepted, and said purchaser thereafter and on or about the 1st day of October, 1909, by the procurement of the plaintiffs was ready, willing, and able to enter into an agreement to purchase said property, at said price, and duly entered into an agreement to purchase said property, and did in fact purchase the same in the manner aforesaid at said price, and the defendant herein accepted said services so rendered by the plaintiffs"; that the plaintiffs performed all of the conditions on their part; and that the plaintiffs demanded 10 per cent. on $12,000, and that the defendant has refused to pay any part thereof.

[1, 2] The answer, so far as any questions here involved are concerned, is a general denial of the material allegations of the complaint. The burden was therefore upon the plaintiffs to show that they had made a contract with the defendant corporation, which appears from the evidence to have been organized for the purpose of manufacturing, importing and exporting chemicals, minerals, clays, colors, electro-platers' materials, etc., for commissions as brokers in the sale of real estate in the state of Connecticut. It will be observed that the complaint does not allege that the defendant was the owner of this real estate; it merely alleges an employment on the part of this corporation engaged in the manufacture and sale of chemicals, etc., to sell the "mill and quarry at South Glastonburg, Conn.," and while one of the plaintiffs testifies that John C. Wiarda, the president and treasurer of the corporation, told him that the corporation owned the property, it was conceded by plaintiffs' counsel upon the trial that the property belonged to Mr. Wiarda personally at the time of the alleged contract, and this fact appears to have been known to the plaintiff, for on the 10th day of August, 1909, three days before the making of the contract alleged in the complaint, McCorry went to look at the mill, and he testifies:

"I made inquiries up there as to how long he had been in possession of that property. I asked Mr. Andress. He said Mr. Wiarda had had a partner there at one time, and the partner didn't do the right thing, and a foreclosure had followed, and Mr. Wiarda became the owner."

With Mr. Wiarda concededly owning the property in question at the time of the alleged contract, and with this fact known to one of the plaintiffs, what reason could there be for the defendant corporation to be making a contract for brokerage? Mr. Wiarda, so far as the pleadings and proofs go, was a responsible business man, owning property in the state of Connecticut. He had no reason, so far as appears, for turning over his private business affairs to the corporation of which he was the president and treasurer, and the evidence ought to be very conclusive which would charge the corporation with his individual obligations. The corporation was not organized to deal in real estate, much less to become the agent of its own president in the hiring of brokers for the sale of his individual property. If Mr. Wiarda wanted to hire a broker, he was certainly as competent to do this individually as he was to do so through the instrumentality of his corporation, acting through himself as the presi-

dent thereof, and the cause of action pleaded is so improbable that nothing short of direct and convincing proof should be permitted to prevail.

[3] The alleged contract was made with Mr. Wiarda, and, as the contract related to a transaction entirely outside of the scope and purposes of the corporation, he could not bind the corporation simply because he was its executive officer. His authority to act for the corporation was limited by the legitimate scope of its business as defined by its charter. It can never be presumed that the agent of such a corporation as is here shown to exist has authority to transact business which the corporation itself is not authorized by its charter to transact (Leary v. Albany Brewing Company, 77 App. Div. 6, 10, 79 N. Y. Supp. 130, and authorities there cited), and persons dealing with a corporation are bound to take notice of the limitations upon the powers of their agents (Lord v. United States Transportation Co., 143 App. Div. 437, 451, 128 N. Y. Supp. 451, and authorities there cited).

[4] If Mr. Wiarda assumed to make a contract in behalf of his corporation to hire brokers to sell his individual property, he could not bind the corporation by such action, for it was not within the apparent scope of his authority as president of a company organized for the purpose of manufacturing and dealing in chemicals, etc. If Mr. Wiarda stated to the plaintiffs that the property belonged to the corporation (and this he denies), there would still be no ground for the plaintiffs to stand upon, for it is not within the apparent authority of a president of a manufacturing corporation to sell its plant and machinery, and it does not appear that the corporation or Mr. Wiarda had any other plant used in manufacturing any of the products in which it was authorized to deal. Lord v. United States Transportation Co., supra. If the plant was a part of the manufacturing equipment of the defendant, it was not within the apparent scope of the authority of the president to sell the same, and, if it was not, then there could be no presumption that Mr. Wiarda was acting for the corporation in hiring a broker to sell the same.

It seems very clear to us that the plaintiffs, if they made any contract whatever, made it with Mr. Wiarda individually. Clearly the evidence in this case does not support the cause of action alleged in the complaint.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.