CARL OSIPOFF, Appellant, *v.* CITY OF NEW YORK, Respondent, Impleaded with Another.

Argued April 23, 1941; decided July 29, 1941.

*Ralph Stout* and *Louis Rothbard* for appellant. It was a question of fact for the jury whether the city employee, when he committed the assault on plaintiff, was acting within the general scope of his employment while engaged in his employer's business, with a view to the furtherance of the interests of his employer. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Hewson* v. *Interurban Street R. Co.*, 95 App. Div. 112; *Magar* v. *Hammond*, 183 N. Y. 387; *Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y. 23; *Jones* v. *Weigand*, 134 App. Div. 644; *Baker* v. *Allen & Arnink Auto Renting Co.*, 231 N. Y. 543; *Buck* v. *Standard Oil*

*Co.,* 224 App. Div. 299; 249 N. Y. 595; *Rounds* v. *D., L. & W. R. R. Co.,* 64 N. Y. 129; *McLoughlin* v. *N. Y. Edison Co.,* 252 N. Y. 202; *Encarnacion* v. *Jamison,* 251 N. Y. 218; *Doscher* v. *Superior Fire Proof Sash & Door Co.,* 221 App. Div. 63; *Katz* v. *Lutz,* 176 App. Div. 460; *N. Y. C. R. R. Co.* v. *City of New York,* 129 Misc. Rep. 917; 224 App. Div. 733.)

*William C. Chanler, Corporation Counsel (Stanley Buchsbaum* and *Irving Galt* of counsel), for respondent. A person who has been assaulted by a municipal employee cannot impose liability on the municipality unless the act was within the scope of the employment. Normally an assault by a laborer or even one in charge of a highway repair group would not be within the scope of his employment; and this is so where the assault is the result of a controversy which has nothing to do with the protection of city property and has no real relation to the work being performed. (*Mott* v. *Consumers' Ice Co.,* 73 N. Y. 543; *Wright* v. *Wilcox,* 19 Wend. 343; *Muller* v. *Hillenbrand,* 227 N. Y. 448; *Zucker* v. *Lannin Realty Co.,* 217 App. Div. 487; *Priest* v. *Hudson River R. R. Co.,* 65 N. Y. 589; *Trebitsch* v. *Goelet Leasing Co.,* 226 App. Div. 567; 252 N. Y. 554; *Atlanta Baseball Co.* v. *Laurence,* 38 Ga. App. 497; *Plotkin* v. *Northland Transportation Co.,* 204 Minn. 422; *Rudgeair* v. *Reading Traction Co.,* 180 Penn. St. 333; *John* v. *Lococo,* 256 Ky. 607; *Steinman* v. *Baltimore Antiseptic Steam Laundry Co.,* 109 Md. 62; *McManus* v. *Crickett,* 1 East, 106.)

CONWAY, J. The plaintiff had a jury verdict. The Appellate Division reversed the judgment entered thereon and dismissed the complaint against the city of New York upon the law but affirmed the judgment as against the individual defendant, who was a municipal employee and the active tort feasor in the occurrence to which reference will later be made. The reversal and dismissal were upon the ground that the municipality was not responsible in damages for the assault by its employee as it was not committed

within the scope of his authority. In view of the dismissal we must take the facts in a light most favorable to the plaintiff and, in determining whether the facts proved constitute a cause of action, give him the benefit of every favorable inference which may reasonably be drawn. (*Faber* v. *City of New York*, 213 N. Y. 411, 414; *Shuman* v. *Hall*, 246 N. Y. 51, 57.) In other words, we must determine whether there is any evidence which presented a question of fact as to whether the employee's assault was committed within the scope of his employment by the city.

The plaintiff was the owner and lessor of a freshly painted truck, of which he had taken delivery on the day in question. It had canvas-covered racks. Plaintiff, accompanied by his seven-year-old son, drove his truck down a street in Brooklyn, after passing an intersecting avenue at which there were no warning notices or barriers indicating that there were any obstructions to be encountered. Between the avenues he came upon the following situation: there was a parked car, not owned by the city, which blocked the right side of the street; alongside of that there was a city truck; to the left there was a pile of broken asphalt which was being loaded upon the city truck. There remained upon the left, for vehicular traffic, a narrow portion of the street upon which had been newly laid a strip of asphalt, above which there were overhanging branches of trees which were likely to scratch the top and sides of plaintiff's truck and to rip and tear the canvas upon the racks.

The method of the city in doing the street repair work is of some importance. There were two gangs at work. The first gang, of which the individual defendant, Sisto, was in charge, cut out the asphalt, where repair was needed, and piled it to one side. The second gang then laid the asphalt. The first then returned and loaded a city truck with the broken pieces of asphalt and they were carted away. It was more or less a continuous, synchronized method of work performance. As the plaintiff approached, the work of loading the debris was in process.

When the plaintiff, after blowing his horn, was directed to proceed over the newly laid asphalt at the extreme left, he descended from his truck and, after inspection, told Sisto and another employee who had approached, that he could not go under the trees without tearing his canvas and that that would be at " his own expense." Thereupon, the employee with Sisto attempted to enter the truck for the purpose of driving it himself and when plaintiff pushed him away, that employee struck plaintiff with his hand and Sisto struck plaintiff with his shovel, inflicting the serious injuries of which complaint is made.

The court left to the jury the question whether " the act of the defendant Sisto in striking the plaintiff was committed in connection with and in the course of the work then being performed by the city of New York and with a view to the furtherance of that work " and instructed the jury that, if it so found, the city was responsible even though the act was wanton, willful and unauthorized by the city. The court further charged that, if the jury found that Sisto's act was entirely without the scope of his employment, no verdict could be found against the city.

What, then, was the apparent scope of Sisto's authority due to his employment by the city? Clearly it was to protect his master's property, to direct the execution of the tasks assigned so that a minimum of time would be consumed and to regulate traffic in and about that portion of the *public highway* of which he and those under him had taken possession. It will be remembered that there were no detour or warning signs at the intersection of street and avenue which the plaintiff had last passed. Certainly it was within Sisto's authority to so direct traffic in the area indicated that newly performed work would not be damaged and so that there would be no interference with the men while doing their work. He had authority to direct traffic to the right side of the street, to the middle of it or to the left side. That was exactly what he undertook to do. He was in command of a portion of the *public highway* which his master was obligated to keep reasonably safe for traffic

and upon which the master was obligated to protect the person of the traveler from harm. Sisto was clothed with the power to direct plaintiff to proceed upon the extreme left of the street and to compel by all lawful means a compliance with that direction.

This brings the instant case within the rule laid down in Pollock's Law of Torts ([14th ed.] pp. 72, 73) as follows: " Another kind of wrong which may be done by a servant in his master's business, and so as to make the master liable, is the excessive or erroneous execution of a lawful authority. To establish a right of action against the master in such a case it must be shown both that the servant intended to do on behalf of his master something of a *kind* which he was in fact authorized to do, and that the act, if done in a proper manner, or under the circumstances erroneously supposed by the servant to exist, would have been lawful. Generally a servant has implied authority to do whatever is reasonably necessary to protect the master's property in emergency, and it is a question of degree whether the force used is excessive.

" The master is chargeable only for acts of an authorized *class* which in the particular instance are wrongful by reason of excess or mistake on the servant's part. For acts which he has neither authorized in *kind* nor sanctioned in particular he is not chargeable." (Italics supplied.)

As to a servant's authority it was well said in *Moore* v. *Metropolitan R. Co.* (8 Q. B. 36, 39), " where there is a necessity to have a person on the spot to act on an emergency, and to determine whether certain things shall or shall not be done, the fact that there is a person on the spot who is acting as if he had express authority, is *prima facie* evidence that he had authority."

Professor Harper in his Law of Torts has discussed the liability of private and municipal corporations for tort in sections 293 and 295. In the former section he says in part:

" There was a tendency, at one time, to ignore the realities of what corporations actually do and, in working out the law of corporate liability to predicate results upon what

it ' could ' and ' could not ' do, as a logical incident of its metaphysical reality. Although faced with the fact that corporations were actually committing torts and crimes in the same way and by the same agencies employed in making contracts, courts could not escape the argument that a creature with no mind or soul could not commit wrongs requiring a specific intent or a definite guilty mind.

" But the argument based upon the ' nature ' of the corporation, ' more quaint, than substantial,' has been universally repudiated. Corporations commit torts by the same people who effect and consummate their legitimate activities. For the most part, a corporation is liable, as an individual, for tort committed by its servants or agents acting within the scope of their service or agency quite as it is liable on its contracts properly executed and entered into by its agents. Thus, corporations have been held liable for assault and battery, false imprisonment, slander and libel, wrongful death, conversion, negligence, deceit, and various types of harm resulting from its extra-hazardous activities, including nuisance, blasting, and keeping dangerous animals, under the same circumstances that would entail liability on the part of an individual principal. And it may be liable for malicious prosecution and other types of tort requiring malice or an evil intent."

In section 295, as to the liability of municipal corporations, he writes:

" * · * * The same conflict exists as to liability for negligence of employees and agents engaged in repairing, cleaning or. constructing streets and highways, the more desirable rule holding the city liable therefor. * * *

" It has been long recognized that the distinction between governmental and corporate powers and functions is an illusory one, incapable of uniform application, and productive of the most unsatisfactory results. The immunity of the city for torts committed by its officers and servants within the scope of their undertakings is much more the result of archaic notions of the ' nature ' of the state and sovereign than of modern social policy, and is therefore,

completely inconsistent with modern tendencies in the law. The agencies of government are institutions of society devised to serve the needs of the entire community. There must necessarily be loss and expense involved in the functioning of these agencies, and such burdens ought to be borne, of course, by the community served. Loss and damage inflicted in the course of the operation of such institutions ought obviously to be counted in the cost of government and carried by society rather than the unfortunate individual upon whom the loss accidentally happens to fall. The partial immunity of municipal corporations in tort is one of the greatest obstructions to the socialization of tort law. The principle can find no justification in sound social policy and is one that is productive of great injustice and hardship to individuals with but slight corresponding advantage to society."

The rule as stated in Pollock's Law of Torts (*supra*) is not in conflict with the statement in *Muller* v. *Hillenbrand* (227 N. Y. 448, at p. 451). There it was said: "The janitor, in assaulting the infant plaintiff, was not acting within the actual or apparent scope of his employment. Had the defendant been present he would have had no authority to do what the janitor did and what he could not legally do he could not, in a legal sense, authorize the janitor to do for him. (*Poulton* v. *L. & S. W. Ry. Co.*, 1867, L. R. 2 Q. B. 534; Pollock on Law of Torts [10th ed.], 97, 98.) "

The words used as quoted were properly applicable to the case then decided but have been given, in cases since decided, although not in this court, a wider meaning than is justified by the case or text cited. Professor Pollock referred to the *Poulton* case in one of the paragraphs under the very subdivision in which he stated the rule quoted *supra*. He said: " But the master is not answerable if the servant takes on himself, though in good faith and meaning to further the master's interest, that which the master has no right to do even if the facts were as the servant thinks them to be: as where a station-master arrested

a passenger for refusing to pay for the carriage of a horse, a thing outside the company's powers." The *Poulton* case was then cited as authority. (Pollock, The Law of Torts [10th ed.], 97, 98.)

In that case, which was an action for false imprisonment, Poulton brought back, on defendant's railway, a horse which had not been sold at an agricultural show. Defendant had agreed to transport such horses, " on return free, if remaining unsold, on production of certificate to that effect." The certificate was honored at the station where the horse was entrained. On his arrival at his destination the plaintiff left the train " and was taking the horse *away along the road,* when the station-master *sent after him,*" and demanded payment for the carriage of the horse. When plaintiff explained the circumstances and refused to .pay, he was *detained* and *taken back* to the station. The reason for the decision that the railway was not responsible for the act of the station-master was that the applicable act of Parliament had enacted " that where a passenger does not pay his fare, he may be taken into custody, and that where goods are not paid for, they may be detained." Thus under the statute the railway company had not the power to detain the plaintiff under the circumstances but only the goods, *i. e.,* the horse. There could be no authority implied from the company to the station-master to do that which the company could not do.

It is clear that there was presented here, at the very least, an issue of fact as to whether or not Sisto and his companion, when they approached plaintiff's truck and attempted to take possession of it, intended to drive over the asphalt strip at the extreme left of the street, even though the truck would be damaged, in order that they might not be compelled to move the city's truck and thus lose time in doing the repair work. Here the employees of the municipality had taken *physical possession of the public highway* upon which the plaintiff was properly proceeding. He was obliged to proceed upon a public highway if .he were to proceed at all.

That the act was willful does not preclude recovery. In *Mott* v. *Consumers' Ice Co.* (73 N. Y. 543) action was brought to recover for injuries sustained by reason of the fact that the driver of one of defendant's ice carts, while engaged in his duties, carelessly drove his cart against plaintiff's carriage, upsetting it and causing the injuries of which complaint was made. On the trial the plaintiff offered in evidence defendant's answer to the original complaint in which the statement was made that the driver of defendant's ice cart " willfully, and not negligently nor carelessly, drove said ice cart against the carriage of the said plaintiff " (p. 544). The plaintiff was nonsuited on the trial and General Term affirmed. On the appeal to this court, we reversed, saying: " But the answer does not exclude all presumption of liability on the part of the master, and, therefore, did not preclude a recovery by the plaintiff. The act may have been ' willful,' and yet committed in the course of the employment, and within the authority of the defendant, and the contrary is not averred, as it should have been, in order fully to defend the action and exclude all presumption of liability. (Citing cases.) It is not made to appear by the answer that the servant committed the act wholly for a purpose of his own, disregarding the object for which he was employed, and not intending by the wrongful act to execute it. It is consistent with the answer that the act was done in the execution of the authority given him, and for the purpose of performing the directions of the defendant. There was clearly no estoppel, and there was evidence taken in connection with the answer, upon which the jury might have found that the act was a negligent, or even a reckless act, in the course of the employment of the servant, and one for which the defendant was responsible. The answer did not conclude the plaintiff, and the case was one for the jury " (pp. 550, 551).

The rule as stated in the *Mott* case was reaffirmed by this court in *Muller* v. *Hillenbrand* (*supra*, p. 451), where it was said: " The rule of liability of a master for the acts of his servant is tersely stated in *Mott* v. *Consumers' Ice Co.*

(73 N. Y. 543, 547). It is that ' For the acts of the servant within the general scope of his employment, while engaged in his master's business, and done with a view to the further-ance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wan-tonly, or even wilfully. \* \* \* But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible.' " (See, also, Pollock's Law of Torts [14th ed.], pp. 75, 76; *Shea* v. *Sixth Avenue R. R. Co.*, 62 N. Y. 180; *Higgins* v. *Watervliet Turn-pike & R. R. Co.*, 46 N. Y. 23; *Rounds* v. *Delaware, L. & W. R. R. Co.*, 64 N. Y. 129, 133, 134; *Girvin* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 289; *Hall* v. *Smathers*, 240 N. Y. 486; *Doscher* v. *Superior Fire Proof Door & Sash Co.*, 221 App. Div. 63; Restatement of the Law of Agency, § 245.)

Under the facts disclosed, there was evidence presented from which a jury could find that the act complained of was within the scope of the actor's employment, done while engaged in his master's business and in " furtherance of that business and the master's interests."

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, J. (dissenting). Questions put to the plain-tiff on his direct examination were answered by him in these words: " Two fellows motioned to me to come ahead. I got off my truck. I seen that I couldn't make it; I would rip the cover and scratch the paint off the truck. Two of them come over to me and told me, ' What kind are you chauffeur? Afraid to go under them trees? ' So I told them, ' If I go under there it will be on my expense — ripping the cover and all that, down.' One fellow walked over to the truck and grabbed hold of it — my truck. He grabbed hold of the knob of the truck and wanted

to get in there and drive it. The fellow who was with Sisto. I pushed him away. That fellow hauled off and he hit me with his hand and then the minute that fellow hit me Sisto took the shovel and hit me over the side of the head."

On these facts, I think Sisto's attack upon the plaintiff cannot reasonably be connected with anything but Sisto's own bad temper. For the sake of the argument, I grant that Sisto and his fellow-workman had undertaken concerted action to conserve the resources of their employer. Even on that large assumption, I think no jury could reasonably find that Sisto's wholly irrational behavior was within the scope of his employment (See Restatement of Agency, § 229, Comment b; 2 Mechem on The Law of Agency [2d ed.], §§ 1977, 1978.)

I vote to affirm the judgment of the Appellate Division.

RIPPEY, LEWIS and DESMOND, JJ., concur with CONWAY, J.; LOUGHRAN, J., dissents in opinion in which LEHMAN, Ch. J., and FINCH, J., concur.

Judgment accordingly.